IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IMED TECHNOLOGY, INC., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:19-CV-1861-E (BK) |
| | § | |
| TELEFLEX, INC., TELEFLEX MEDICAL, | § | |
| INC., ARROW INTERNATIONAL, INC., | § | |
| TELEFLEX MEDICAL EUROPE, LTD., | § | |
| TELEFLEX MEDICAL EUROPE SRL, | § | |
| DEFENDANTS. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the District Judge's *Order of Reference*, Doc. 10, Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*, Doc. 7, is now before the Court for findings and a recommended disposition. Upon consideration, the motion should be **GRANTED**.

**I.   BACKGROUND**

Plaintiff, a manufacturer and supplier of medical equipment, initiated this action in state court against Defendants, a collection of related entities. Doc. 1-3 at 3, 5. Plaintiff claims that in the fall of 2018, Defendants suddenly began complaining that Plaintiff's products were "non-conforming" and contracted to obtain products directly from Plaintiff's manufacturer. Doc. 1-3 at 7. Plaintiff alleges that it already had delivered various items that Defendants ordered and has not paid for, totaling nearly $640,000.00. Doc. 1-3 at 7. Additionally, Plaintiff contends that Defendants have open, unfulfilled purchase orders which represent more than $238,000.00 in lost profit. Doc. 1-3 at 8. Plaintiff's sole cause of action is breach of contract. Doc. 1-3 at 8-9.

Defendants removed the case to this Court based on diversity of jurisdiction and now move to dismiss this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Doc. 7. Plaintiff has responded, and the motion is ripe for adjudication. *See* Doc. 17; Doc. 19.

## II. APPLICABLE LAW

Personal jurisdiction is "an essential element" of district court jurisdiction, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks omitted). A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because Texas' long-arm statute has been interpreted to extend to the limits of due process, this Court need only determine whether subjecting Defendants to suit in Texas in this case would be consistent with the Due Process Clause. *Id.*

The Due Process Clause protects a corporation from being subject to the binding judgments of a forum with which it has not established meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). A federal court may exercise personal jurisdiction over an out-of-state defendant if the defendant has certain "minimum contacts" with the state such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Id.* at 316.

"Endeavoring to give specific content to the 'fair play and substantial justice' concept, the Court in *International Shoe* classified cases involving out-of-state corporate defendants."

2

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). First, jurisdiction can be asserted where a corporation's forum state activity is 'continuous and systematic' and *that activity gave rise to the episode-in-suit.*" *Id.* (emphasis in original) (quoting *International Shoe*, 326 U.S. at 317). Second, the "commission of certain 'single or occasional acts' in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections." *Id.* (quoting *International Shoe*, 326 U.S. at 318). Courts group these two categories under the heading "specific jurisdiction."[1] *Id.* at 923-24 (alterations and internal citation omitted) (quoting *Helicopteros Nacionales*, 466 U.S. at 414 n.8).

> Specific jurisdiction requires a plaintiff to show that:
>
> (1) there are sufficient (i.e., not 'random fortuitous or attenuated') pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. Once [the] plaintiff makes that showing, the defendant can then defeat the exercise of specific jurisdiction by showing (4) that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable.

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220-22 (5th Cir. 2012). The "primary concern" in assessing personal jurisdiction is "the burden on the defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

---

[1] "*International Shoe* distinguished specific jurisdiction cases from those in which "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe*, 326 U.S. at 318. That type of adjudicatory authority is referred to as "general jurisdiction" and is not relied upon by Plaintiff in this case. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

Turning to that final prong of the analysis: In considering whether exercising personal jurisdiction will comport with "traditional notions of fair play and substantial justice," a court must weigh (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) the interest of the states in "furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Where, as here, a non-resident defendant challenges personal jurisdiction with a motion filed pursuant to Rule 12(b)(2), the plaintiff need only present *prima facie* evidence to support its burden of demonstrating facts sufficient to support jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). To that end, the court "must accept the plaintiff's 'uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Id.* (citation and internal alteration omitted). The court may thus consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Id.* (citation omitted).

### III. ARGUMENTS AND ANALYSIS

Defendants Teleflex Incorporated ("Teleflex"), Teleflex Medical Incorporated ("Teleflex Medical"), and Arrow International, Inc. ("Arrow") assert that they are variously incorporated and have their principal offices in (1) Delaware and Pennsylvania; (2) California and Pennsylvania; and (3) Pennsylvania and North Carolina, respectively. Doc. 8 at 8. Defendant Teleflex Medical Europe, Ltd. ("Teleflex Europe") alleges that it is an Irish entity wholly owned by Teleflex, with its principal office located in Ireland. Doc. 8 at 9. Finally, Defendant Teleflex

4

Medical S.r.L. ("Teleflex S.r.L.") is a limited liability company organized under the laws of Italy and its principal place of business is also in Italy. Doc. 8 at 9.

Defendants argue that the Court lacks specific jurisdiction over them because the underlying controversy did not take place in Texas. Doc. 8 at 13. In particular, Defendants assert that the mere act of contracting with a resident of a forum state, such as Plaintiff, is not sufficient to establish minimum contacts. Doc. 8 at 13-14. Accordingly, because Plaintiff does not point to any additional contacts, Defendants argue that dismissal for lack of jurisdiction is warranted. Doc. 8 at 14. Further, Defendants urge that the additional factors courts consider in determining whether a nonresident defendant engaged in purposeful activity in Texas, including the place of performance of the contract, the place of contracting, and the law governing the contract, do not weigh in Plaintiff's favor. Doc. 8 at 14-15. Finally, Defendants contend that forcing them to defend this action in Texas would be unfair in light of the financial burden involved and the fact that (1) the contract involved was executed in, and is governed by, North Carolina law; (2) the dispute spawns from the purchase and sale of non-conforming goods made in China; and (3) Texas has no interest in adjudicating this dispute where Defendants have little to no ties to the state. Doc. 8 at 16.

Plaintiff responds that each of the Defendants purposefully directed their actions at the State of Texas by "contracting, negotiating, entering transactions, and contemplating future transactions with Plaintiff through a course of business that extended for over a decade [and their] decision to quit paying for the goods they contracted for is the cause of Plaintiff's claims." Doc. 17 at 8-9. Further, Plaintiff avers that Teleflex Medical and Arrow are registered to do business in Texas, and Arrow required that its product be delivered to El Paso, Texas. Doc. 17 at 9. Plaintiff also contends that trying the case in this Court would not offend notions of

5

fundamental fairness because Texas law will be used in deciding the claims, Plaintiff's witnesses are located in Texas, the contracts were fulfilled in Texas, and Defendants chose to conduct business with Plaintiff in Texas for ten years. Doc. 17 at 10. If the Court is inclined to grant Defendants' motion, Plaintiff requests leave to amend its complaint.[2] Doc. 17 at 11.

      The Court readily concludes in this case that specific jurisdiction over Defendants is lacking. In conducting the minimum contacts analysis, the Court must look to Defendants' contacts with the state of Texas, not Defendants' contacts with Plaintiff. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). Put another way, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum state . . . ." *Id.* at 285. In the breach-of-contract context, "only those acts which relate to the formation of the contract and the subsequent breach are relevant." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (quoting *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003)). This includes "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). But, the mere "exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."[3] *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)

---

[2] Defendants largely reiterate their arguments in their reply brief and argue that any attempt by Plaintiff to amend its complaint would be futile. *See* Doc. 19.

[3] While the parties dispute whether the governing contract is an agreement entered into between Plaintiff and a Teleflex-related entity known as Inmed Incorporated or the individual purchase orders each Defendants placed, the outcome would be the same regardless. *See* Doc. 17 at 9. The Court thus need not resolve that issue.

(citation omitted). To hold otherwise, would permit jurisdiction to be based "on the fortuity that one of the parties happens to reside in the forum state." *Id.* (citation omitted).

Thus, even though it was foreseeable that Plaintiff would perform many of its contractual duties in Texas at Defendants' behest, that is insufficient to establish ties between Defendants and Texas. *Id.*; *see also McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (holding that there were insufficient contacts to establish personal jurisdiction in Texas over former sales representative, a Colorado resident, with respect to plaintiff's claim for breach of contract despite the parties' ten-year contractual relationship and significant communications between the parties where the contract was centered around defendant's operations outside of Texas, the hub of defendant's activities was in Colorado, and defendant did not travel to Texas to sell product); *but cf. Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003) (finding jurisdiction where the contract contemplated that the plaintiff would make shipments from Texas on behalf of third-party Texas customers, and the plaintiff's Texas location was strategically advantageous to the defendant and was the basis for the agreement).

Here, the whole of Plaintiff's complaint relates to Defendants' alleged refusal to carry out their end of the bargain. *See* Doc. 1-3 *passim*. None of the Defendants has a principal place of business in or is incorporated or organized in Texas. Doc. 8 at 8-9. Additionally, the purchase orders themselves reflect that Plaintiff shipped the products ordered by Teleflex Medical, Teleflex Europe, and Teleflex S.r.L. to Mississippi, Belgium, and Italy, respectively. *See, e.g.*, Doc. 18 at 8 (Olive Branch, Mississippi); Doc. 18 at 31 (Tongeren, Belgium); Doc. 18 at 57 (Caleppio di Settala, Italy). That is insufficient for jurisdictional purposes. *Walden*, 571 U.S. at 285.

7

The only arguable "direct" links between any Defendant and Texas that Plaintiff points to are that (1) Teleflex Medical and Arrow are registered to do business in Texas as foreign corporations, Doc. 17 at 2-3; and (2) Arrow required that the products it ordered from Plaintiff be delivered to a facility in El Paso, Texas. Doc. 17 at 4; Doc. 18 at 6. As to the first proposition, the mere fact that Teleflex Medical and Arrow are registered in Texas is not, in and of itself, sufficient to confer jurisdiction. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) (holding that a foreign corporation that complies with the Texas registration statute only consents to personal jurisdiction if such jurisdiction is constitutionally permissible); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 888-89 (S.D. Tex. 1993) (same). Indeed, Teleflex Medical and Arrow could engage in business with 100 Texas consumers— it is *Plaintiff's* cause of action that must arise out of Teleflex Medical's and/or Arrow's Texas-related contacts to support specific jurisdiction.

Plaintiff's shipment of products to Arrow in Texas presents a somewhat closer question. Plaintiff has presented as evidence one purchase order from Arrow which requested that the products be sent to Arrow at "its facility" in El Paso, Texas. Doc. 18 at 51. But the nature of the facility is unclear. Arrow refers to it as a "customs clearing house" for products on their way to Mexico, Doc. 19 at 2, and the purchase order itself indicates that Arrow receives shipments at "sites across North America," Doc. 18 at 51. Plaintiff's finance and accounting manager states in her supporting affidavit that prior to the purchase order at issue in this suit, Plaintiff had sent Arrow 17 invoices in response to approximately 17 purchase orders, but she does not specify where the products were shipped. Doc. 18 at 6. Given that the nature of the El Paso facility is unknown, as are the destinations of the other 17 orders Plaintiff shipped to Arrow, Plaintiff has not met its burden of establishing that there were sufficient pre-litigation connections between

8

Arrow and Texas and that Arrow purposefully established such connections.[4] *Pervasive Software*, 688 F.3d at 221. Accordingly, Plaintiff's complaint is subject to dismissal in its entirety for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*, Doc. 7, should be **GRANTED** and this case be **DISMISSED WITHOUT PREJUDICE**.

**SO RECOMMENDED** on April 13, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[4] If Plaintiff desires to amend its complaint, it may file a separate motion for leave to do so, with a copy of its proposed amended pleading attached, in accordance with local civil rules.

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F̲ED. R. C̲IV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).